UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS GATICA, III, #226936,

Petitioner,

v.                                    CASE NO. 4:17-CV-14176
                                      HONORABLE LINDA V. PARKER

WILLIS CHAPMAN,

Respondent.

_____/

## OPINION & ORDER (1) DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS (ECF NO. 1); (2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY; AND (3) DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

This is a habeas case brought pursuant to 28 U.S.C. § 2254.   Following a

jury trial in the Genesee County Circuit Court, Michigan prisoner Thomas Gatica,

III ("Petitioner") was convicted of armed robbery, Mich. Comp. Laws § 750.529,

conducting a criminal enterprise, Mich. Comp. Laws § 750.159(i)(1), four counts

of bank robbery, Mich. Comp. Laws § 750.531, five counts of felon in possession

of a firearm, Mich. Comp. Laws § 750.224f, and five counts of possession of a

firearm during the commission of a felony, Mich. Comp. Laws § 750.227b.   In

2015, he was sentenced as a fourth habitual offender, Mich. Comp. Laws § 769.12,

to 19 years, 7 months to 30 years imprisonment on the armed robbery conviction, a

concurrent term of 13 years, 4 months to 21 years imprisonment on the criminal

enterprise conviction, concurrent terms of 9 years, 6 months to 30 years

imprisonment on the bank robbery convictions, concurrent terms of 3 years to 5

years imprisonment on each of the felon in possession convictions,[1] and 2 years

imprisonment on each of the felony firearm convictions (concurrent as to all of the

felony firearm convictions, but consecutive as to the other sentences).   (ECF No.

7-12 at Pg. ID 1262-63.)

In his habeas petition, Petitioner raises claims concerning the conduct of the

prosecutor, the effectiveness of trial counsel, and his right to a speedy trial.   (ECF

No. 1.)   For the reasons stated herein, the Court denies the habeas petition.

## I.   Facts and Procedural History

Petitioner's convictions arise from his role as a getaway driver in a series of

armed robberies that occurred in Genesee County, Michigan from 2010 to 2013.

The Michigan Court of Appeals described the relevant facts, which are presumed

correct on habeas review, *see* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d

410, 413 (6th Cir. 2009), as follows:

---

[1] Petitioner was discharged from his felon in possession sentences on January 29,
2020.   *See* Offender Profile, Michigan Department of Corrections Offender
Tracking Information System ("OTIS"),
http://mdocweb.state.mi.us/otis2profile.aspx?mdocNumber=226936.

This case stems from a series of armed robberies, including several bank robberies, which took place from 2010 to 2013.   Defendant was arrested after fleeing from the scene of a bank robbery with two accomplices and was charged with 25 counts including: one count of racketeering, four counts of armed robbery, four counts of bank robbery, eight counts of felon-in-possession, and eight counts of felony-firearm.   Defendant was acquitted of nine counts, encompassing three of the armed robbery charges and six of the firearm-related charges tied to the rejected armed robbery counts.   At defendant's trial, the prosecution presented evidence showing that defendant acted as the getaway driver in multiple robberies committed by his nephew, his two brothers, and a family friend.

*People v. Gatica*, No. 326230, 2016 WL 3541776, *1 (Mich. Ct. App. June 28, 2016).

Following his convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals, articulating his claims as follows:

I.   The prosecutor denied [Petitioner] due process and a fair trial by failing to reveal the complete plea agreement with the primary accomplice witness . . . thereby misleading the jury regarding the witness's credibility.

II.   The right to a speedy trial is enshrined in the Constitution. The United States Supreme Court had adopted a four-part balancing test to determine whether the delay in trial, attributable to the State, has resulted in a violation of this constitutional right.   The State's failure to bring [Petitioner] to trial for over 18 months created a presumption of prejudice that the State cannot overcome.

(ECF No. 7-13 at Pg. ID 1285.)

The court denied relief on those claims, as well as a claim that counsel was

3

ineffective for failing to properly cross-examine the accomplice witness and for not

objecting to his misleading testimony, and affirmed Petitioner's convictions.

*Gatica*, 2016 WL 3541776 at *1-4; (*see also* ECF No. 7-13 at Pg. ID 1266-69).

Petitioner filed an application for leave to appeal with the Michigan Supreme

Court, which was denied in a standard order.   *People v. Gatica*, 500 Mich. 925,

888 N.W.2d 104 (2017).

Petitioner thereafter filed his habeas petition, raises prosecutorial

misconduct, ineffective assistance of counsel, and speedy trial claims.[2]   (ECF No.

1.)   Respondent has filed an answer to the petition contending that it should be

denied because the prosecutorial misconduct claim is procedurally defaulted and

all of the claims lack merit.   (ECF No. 6.)

## II.   Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal

courts must use when considering habeas petitions brought by prisoners

challenging their state court convictions.   The AEDPA provides in relevant part:

An application for a writ of habeas corpus on behalf of a person in

---

[2] Because Petitioner did not file a supporting brief, the Court has looked to his
state appellate brief for a fuller explanation of his claims.
.

custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*

5

*Bell*, 535 U.S. at 694.    However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.    The state court's application must have been 'objectively unreasonable.'"    *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.    The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'"    *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam).

A state court's determination that a claim lacks merit "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."    *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).    The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."    *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)).    Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a

6

prior decision" of the Supreme Court.   *Id*.   Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."   *Id*; *see also White v. Woodall*, 572 U.S. 415, 419-20 (2014). Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 575 U.S. 312, 316 (2015).   A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable.   *Woods v. Etherton*, _ U.S. _, 136 S. Ct. 1149, 1152 (2016).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision.   *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26

7

(2008) (per curiam)); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).    Section

2254(d) "does not require a state court to give reasons before its decision can be

deemed to have been 'adjudicated on the merits.'"    *Harrington*, 562 U.S. at 100.

Furthermore, it "does not require citation of [Supreme Court] cases—indeed, it

does not even require *awareness* of [Supreme Court] cases, so long as neither the

reasoning nor the result of the state-court decision contradicts them."    *Early v.

Packer*, 537 U.S. 3, 8 (2002) (emphasis in original); *see also Mitchell*, 540 U.S. at

16.

The requirements of clearly established law are to be determined solely by

Supreme Court precedent.    Thus, "circuit precedent does not constitute 'clearly

established Federal law as determined by the Supreme Court'" and it cannot

provide the basis for federal habeas relief.    *Parker v. Matthews*, 567 U.S. 37, 48-

49 (2012) (per curiam); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per

curiam).    The decisions of lower federal courts, however, may be useful in

assessing the reasonableness of the state court's resolution of an issue.    *Stewart

v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340

F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D.

Mich. 2002).

A state court's factual determinations are presumed correct on federal

8

habeas review.  *See* 28 U.S.C. § 2254(e)(1).  A habeas petitioner may rebut this presumption only with clear and convincing evidence.  *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).  Moreover, habeas review is "limited to the record that was before the state court."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III.  Discussion

### A.  Procedural Default

As an initial matter, Respondent contends that Petitioner's prosecutorial misconduct claim is barred by procedural default.  (ECF No. 6 at Pg. ID 45-47.) It is well-settled, however, that federal courts on habeas review "are not required to address a procedural-default issue before deciding against the petitioner on the merits."  *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).  The Supreme Court has explained the rationale behind such a policy:  "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."  *Lambrix*, 520 U.S. at 525.  In this case, the procedural default issue is complex and intertwined with the ineffective assistance of counsel issue such that the substantive issue is easier to resolve.  Consequently, the interests of

9

judicial economy are best served by addressing the merits of the claim.

### B.   Merits

### 1.   Prosecutorial Misconduct Claim

Petitioner first asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by failing to disclose the complete plea agreement with the primary accomplice witness, Petitioner's nephew, Albert Read, Jr., thereby misleading the jury regarding the witness's credibility.   (ECF No. 7-13 at Pg. ID 1299, 1306-07.)   Respondent contends that this claim lacks merit.   (ECF No. 6 at Pg. ID 47-56.)

The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction."   *Berger v. United States*, 295 U.S. 78, 88 (1935).   To prevail on a claim of prosecutorial misconduct, however, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process."   *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly*); *see also Parker v. Matthews*, 567 U.S. 37, 45 (2012) (confirming that *Donnelly/Darde*n is the proper standard).

It is well-established that a prosecutor's failure to disclose evidence

10

favorable to the defense constitutes a denial of due process "where the evidence is

material either to guilt or to punishment, irrespective of the good faith or bad faith

of the prosecution."   *Brady v. Maryland*, 373 U.S. 83, 87 (1963).   The duty to

disclose favorable evidence includes the duty to disclose impeachment evidence.

*United States v. Bagley*, 473 U.S. 667, 682 (1985).

Additionally, the Supreme Court has made clear that the "deliberate

deception of a court and jurors by the presentation of known and false evidence is

incompatible with the rudimentary demands of justice."   *Giglio v. United States*,

405 U.S. 150, 153 (1972); *see also Napue v. Illinois*, 360 U.S. 264, 271 (1959);

*Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998).   A habeas petitioner bears the

burden of proving that the disputed testimony constitutes perjury.   *Napue*, 360

U.S. at 270.   To prevail on a claim that a conviction was obtained by evidence

that the government knew or should have known to be false, a defendant must

show that the statements were actually false, that the statements were material,

and that the prosecutor knew that the statements were false.   *Coe*, 161 F.3d at

343.

The Michigan Court of Appeals denied relief on this claim.   The court

explained:

We have scoured the record and there is no indication of any actual

11

plea agreement existing between defendant's nephew and the prosecutor at the time of the nephew's testimony.   At best, defendant's nephew had a reasonable expectation of leniency of unknown degree relative to the various charges pending against the nephew, which expectation resulted from communications between him and the prosecutor, and which needed to be and was disclosed to the jury, as it had a bearing on his personal interest in testifying and thus on his credibility.   *See* MCR 6.201(B)(5); *People v. Atkins*, 397 Mich 163, 173-174; 243 NW2d 292 (1976); *People v. Bosca*, 310 Mich App 1, 32; 871 NW2d 307 (2015); *People v. Layher*, 238 Mich App 573, 580; 607 NW2d 91 (1999).

On direct examination by the prosecutor, the nephew, after acknowledging that he was charged with racketeering and a number of armed robberies and bank robberies, agreed with the prosecutor's statement that he would receive "some type of deal after [his] testimony."   On cross-examination, defendant's nephew testified with respect to an inculpatory proffer or statement that he had given authorities nearly a year earlier after having first denied any participation in the crimes.   According to defendant's nephew, in relation to the proffer, there had been negotiations with the nephew's attorney about the nephew being released from jail and placed on a tether, being subjected to a single count of bank robbery, and being exposed to sentencing guidelines of 19 to 51 months.   Defendant's nephew acknowledged that he had been released from jail and was on a tether, but he stated that no firm plea deal had been in place regarding the charges and sentencing.   Moreover, during a discussion of the jury instructions, the prosecutor was adamant that defendant's nephew did not yet have a deal and that the last failed plea discussion had concerned "two bank robberies and a felony[-]firearm."

In sum, the jury was informed, as elicited by the prosecutor, that some level of leniency was going to be provided to defendant's nephew in exchange for his cooperation and testimony and that no finalized plea agreement was in place.   The existing record does not belie those points.   Further, on the basis of the

12

cross-examination of the nephew, which was a bit muddled in regard to negotiations and the proffer, the jury was perhaps left with the impression that some sort of deal had been struck, encompassing a single count of bank robbery and a sentence within the range of 19 to 51 months.   Such an impression would have been inaccurate given the record as a whole, yet it was to defendant's benefit. Overall, the jury was informed and understood that defendant's nephew had a personal interest in testifying and that a prosecutorial reward of some nature would flow from his testimony, bearing on his credibility.   The record does not support a conclusion that the prosecutor engaged in any misconduct.[1]

Moreover, the overwhelming evidence of defendant's guilt would render any assumed prosecutorial misconduct harmless.   Defendant cannot show the requisite prejudice, i.e., that the presumed misconduct affected the outcome of the lower court proceedings, nor did any misconduct result in the conviction of an actually innocent defendant or impact the fairness, integrity, or public reputation of the judicial proceedings independent of defendant's innocence. *Carines*, 460 Mich. at 763.   The evidence plainly established that the motor vehicles utilized in the robberies for which defendant was convicted were all directly tied to defendant, including the car used in the final bank robbery, which vehicle was driven by defendant as he fled the scene of that robbery with police in pursuit.   During the flight in which defendant ran stop signs and stop lights, two of his accomplices exited the car and fled, and defendant eventually crashed the vehicle and was chased by police for several blocks on foot before being apprehended.   Further, one of defendant's brothers, who was involved in the series of robberies and entered a plea, implicated defendant in the robberies.   Defendant's other

---

[1] According to the Michigan Offender Tracking Information System, defendant's nephew eventually pleaded guilty to two counts of bank robbery and received two years of probation.   He was sentenced on June 24, 2015, which was approximately seven months after the conclusion of defendant's trial, strongly suggesting that the plea agreement had indeed been reached after the nephew's testimony at defendant's trial.

> brother gave the police a statement implicating defendant in one of
> the bank robberies.    Additionally, defendant's DNA was linked to a
> pair of black leather gloves connected to a 2010 bank robbery.
> Accordingly, even if the jury was informed that defendant's nephew
> had a deal at the time of his testimony comparable to the deal upon
> which he was eventually sentenced, which finds no basis in the
> record, he cannot establish any prejudice.    Reversal is unwarranted.

*Gatica*, 2016 WL 3541776 at *1-2 (footnote in original).

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.    First, the Michigan Court of Appeals' factual finding that no plea deal was in effect at the time of Petitioner's trial is presumed correct, *see* 28 U.S.C. § 2254(e)(1), and Petitioner fails to rebut this presumption with clear and convincing evidence.    *See Warren*, 161 F.3d at 360-61.    Rather, Petitioner merely asserts, without evidentiary support, that his nephew and the prosecutor failed to disclose a plea deal.    (*See* ECF No. 7-13 at Pg. ID 1306.)    It is well-established, however, that conclusory allegations are insufficient to warrant federal habeas relief.    *See, e.g., Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (stating that bald assertions and conclusory allegations do not provide a basis for an evidentiary hearing on habeas review).    Moreover, the fact that Petitioner subsequently entered a plea, several months after Petitioner's trial, is

14

not evidence that a plea deal existed at the time of trial.   *See e.g., Matthews v. Ishee*, 486 F.3d 883, 896 (6th Cir. 2007) (concluding that the fact the witness entered into a favorable plea bargain within two weeks after the defendant's conviction and sentence is not evidence, or is at most weak circumstantial evidence, that a deal existed at the time of trial).   Petitioner thus fails to establish the factual predicate for this claim.

Second, Petitioner fails to show that the prosecutor presented false testimony and/or failed to correct false testimony about the anticipated plea deal. (*See* ECF No. 7-13 at Pg. ID 1299, 1306-07.)   Rather, the record indicates that Petitioner's nephew testified about negotiations for a plea bargain with a single bank robbery count and a sentence of 19 to 51 months in prison, but stated that there was no agreement yet.   The prosecutor agreed that no plea deal had been reached, but indicated that the last offer was for a plea to two counts of bank robbery with a felony firearm charge.   Such a contradiction does not constitute perjury, nor does it constitute prosecutorial misconduct.   "While a prosecutor may not knowingly use perjured testimony, a prosecutor is not required to ensure that prosecution witnesses' testimony be free from all confusion, inconsistency, and uncertainty."   *Jackson v. Lafler*, No. 06-CV-15676, 2009 WL 1313316, *12 (E.D. Mich. May 11, 2009).   The record does not show that Petitioner's nephew

15

provided false testimony, that the prosecutor purposefully elicited false testimony or misrepresented the facts, or that the prosecutor failed to correct false testimony.

Lastly, to the extent that Petitioner's nephew's testimony about his anticipated plea deal varied from the deal he actually received and/or the prosecutor could be said to have erred in failing to correct any inaccuracies or misleading statements, there is no reasonable likelihood that such error affected the outcome at trial.   For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Holland v. Rivard*, 800 F.3d 224, 243 (6th Cir. 2015); *see also Fry v. Pliler*, 551 U.S. 112, 117-18 (2007) (*Brecht* standard applies in "virtually all" habeas cases); *O'Neal v. McAninch*, 513 U.S. 432, 445 (1995) (concluding that habeas court should grant petition if it has "grave doubt" about whether trial error had substantial and injurious effect or influence on the jury's verdict); *Ruelas v. Wolfenbarger*, 580 F.3d 403 (6th Cir. 2009) (ruling that *Brecht* is "always the test" in this circuit); *Carter v. Mitchell*, 443 F.3d 517, 537 (6th Cir. 2006) (applying *Brecht* analysis to claimed *Giglio* violation).

In this case, the jury was well aware that Petitioner's nephew had received

16

favorable treatment in exchange for his cooperation, that he was in negotiations

with the prosecutor, and that he anticipated receiving a favorable plea deal.

Consequently, the jury was aware of his potential bias and motivation to testify at

trial and implicate Petitioner in the charged crimes.   While the plea deal that

Petitioner's nephew ultimately received, months after Petitioner's trial, was more

favorable as to sentencing than the one he alluded to during trial, such a

distinction was not material as both deals provided him with a substantial bargain.

Additionally, as explained by the Michigan Court of Appeals, the prosecution

presented overwhelming evidence of Petitioner's guilt at trial.   Thus, any error

by the witness or the prosecutor was harmless beyond a reasonable doubt.

Habeas relief is not warranted based on this claim.

### 2.   Ineffective Assistance of Trial Counsel Claim

Petitioner relatedly asserts that he is entitled to habeas relief because trial

counsel was ineffective for failing to properly cross-examine his nephew about his

plea agreement and for failing to object to his misleading testimony.   (*See* ECF

No. 7-13 at Pg. ID 1299-1300, 1306.)   Respondent contends that this claim lacks

merit.   (ECF No. 6 at Pg. ID 56-59.)

The Sixth Amendment to the United States Constitution guarantees a

criminal defendant the right to the effective assistance of counsel.   In *Strickland*

*v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel.    First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment.    *Strickland*, 466 U.S. at 687.    Second, the petitioner must establish that counsel's deficient performance prejudiced the defense.    Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal.    *Id.*

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance."    *Id*. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id*. at 689.    There is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.    *Id.* at 690.    The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Thomas v. Lecureux*, 8 F. App'x 461, 463 (6th Cir. 2001).

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."    *Strickland*, 466 U.S. at 694.    A

reasonable probability is one that is sufficient to undermine confidence in the

outcome of the proceeding.   *Id*.   "On balance, the benchmark for judging any

claim of ineffectiveness must be whether counsel's conduct so undermined the

proper functioning of the adversarial process that the [proceeding] cannot be

relied on as having produced a just result.*"   Id.* at 686.

The Supreme Court has confirmed that a federal court's consideration of

ineffective assistance of counsel claims arising from state criminal proceedings is

quite limited on habeas review due to the deference accorded trial attorneys and

state appellate courts reviewing their performance.   *See Harrington*, 562 U.S. at

105.   "The standards created by *Strickland* and § 2254(d) are both 'highly

deferential,' and when the two apply in tandem, review is 'doubly' so."   *Id.*

(internal and end citations omitted).   "When § 2254(d) applies, the question is

not whether counsel's actions were reasonable.   The question is whether there is

any reasonable argument that counsel satisfied *Strickland*'s deferential standard."

*Id*.

The Michigan Court of Appeals denied relief on this claim.   The court

explained:

> We also reject defendant's inadequately stated and briefed argument
> that counsel was ineffective for failing to cross-examine defendant's
> nephew about his purported plea and for failing to object to the

19

nephew's misleading and untruthful testimony relative to the plea. Again, there was no evidence of any finalized plea agreement at the time of the nephew's trial testimony.   Therefore, defendant has failed to establish the factual predicate for his ineffective assistance claim and has not shown that counsel's performance was deficient. *People v. Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). Furthermore, as discussed above, defendant cannot establish the requisite prejudice.   *Id.*

*Gatica*, 2016 WL 3541775 at *2 n.2.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.   Given Petitioner's failure to show that a plea deal existed at the time of trial, he cannot establish that counsel erred in cross-examining Petitioner's nephew or in failing to object to his testimony.   Moreover, since the jury was aware of Petitioner's nephew's possible bias and motivation to testify and given the significant evidence of Petitioner's guilt presented at trial, Petitioner cannot establish that he was prejudiced by counsel's conduct.   He thus fails to establish that trial counsel was ineffective under the *Strickland* standard.   Habeas relief is not warranted based on this claim.

### 3.   Speedy Trial Claim

Lastly, Petitioner asserts that he is entitled to habeas relief due to a violation of his federal right to a speedy trial because there was a 20-month delay between

20

his arrest and his trial.   (*See* ECF No. 1 at Pg. ID 7.)   Respondent contends that this claim lacks merit.   (ECF No. 6 at Pg. ID 59-71.)

The Sixth Amendment to the United States Constitution provides a criminal defendant with the constitutional right to a speedy trial.   U.S. Const. amend. VI. To determine whether a speedy trial violation has occurred, a reviewing court must consider the following four factors:   (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his speedy trial right, and (4) the prejudice to the defendant.   *Barker v. Wingo*, 407 U.S. 514, 530 (1972).

No single factor is determinative; rather a court must weigh the factors and engage in a "difficult and sensitive balancing process" to determine whether a constitutional violation has occurred.   *Id*. at 533.   The right to a speedy trial "is 'amorphous,' 'slippery,' and 'necessarily relative.'"   *Vermont v. Brillon*, 556 U.S. 81, 89 (2009) (citations omitted).   That being said, the length of delay is a "triggering factor" because "until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."   *Barker*, 407 U.S. at 530.   Thus, to trigger a speedy trial analysis, a defendant must allege that the interval between accusation and trial has crossed the line between ordinary delay and presumptively prejudicial delay.   *Doggett v. United States*, 505 U.S. 647, 651-52 (1992).   Courts have generally found delays

21

of one year or more to be "presumptively prejudicial."   *Id*. at 652, n.1.

Applying the foregoing standards, the Michigan Court of Appeals denied

relief on this claim.   The court explained in relevant part:

> Here, the delay between defendant's arrest and his trial was
> approximately 20 months, making it presumptively prejudicial.
> With respect to the reasons for the delay, some of the delay was
> attributable and must be charged to defendant, considering that he
> substituted counsel at one stage and subsequently expressly asked
> for and was granted a later trial date while awaiting transcripts of his
> brother's plea.   *See People v. Cain*, 238 Mich App 95, 113; 605
> NW2d 28 (1999).   Other reasons for the delay pertained to
> scheduling issues and judicial reassignment, which, although
> technically charged against the prosecution, are given a neutral tint
> and assigned minimal weight.   *People v. Waclawski*, 286 Mich App
> 634, 666; 780 NW2d 321 (2009).   Additional reasons for the delay
> included the processing of a substantial amount of DNA evidence,
> ongoing plea negotiations relative to defendant's accomplices, and
> the sheer complexity and enormity of the case.   Delays due to the
> complexity of a criminal case are legitimate and tolerable.   *Cain*,
> 238 Mich App at 113; *People v. Goode*, 106 Mich App 129, 132;
> 308 NW2d 448 (1981).   This factor does not weigh in favor of
> either party.
>
> In regard to defendant's assertion of the right to a speedy trial, he did
> not assert the right, likely because of the case's complexity and size
> and his own request for more time prior to trial.[3]   Finally, with

---

[3]  We reject as meritless defendant's arguments that it was unnecessary for him to
invoke the right to a speedy trial because the trial court took note of the case's slow
progression and that the right was asserted when defendant presented a 180-day
argument for bond.   Indeed, when defendant requested bond on the basis of the
180-day rule, the prosecution indicated that it was ready for trial, while defendant
stated that he was not ready for trial on the scheduled date, at which point the court
set a later trial date.

respect to the presumption of prejudice, the prosecutor has shown that no actual injury occurred to defendant.   The record reflects that there was no prejudice to defendant's person by way of oppressive pretrial incarceration and, more importantly, no prejudice to his defense, as a result of the delay.   *People v. Williams*, 475 Mich 245, 264; 716 NW2d 208 (2006).   Defendant makes no claim that because of the delay he was somehow unable to defend himself or lost access to exculpatory evidence.   The fact that the delay may have allowed the prosecution to develop its case by turning defendant's accomplices against him does not constitute relevant prejudice for purposes of speedy-trial analysis.   *See People v. Holtzer*, 255 Mich App 478, 493; 660 NW2d 405 (2003) ("While a delay that impairs the defense must be taken most seriously, we do not equate an enhancement of the prosecution's case with the impairment of the defense.") (citation omitted).   Reversal is unwarranted.

*Gatica*, 2016 WL 3541776 at *3 (footnote in original).

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.   The Michigan Court of Appeals conducted a reasonable analysis of the four *Barker* factors.   The first factor, the length of the delay, was 20 months, so it is presumptively prejudicial and requires consideration of the other factors.   *See, e.g., Brown v. Bobby*, 656 F.3d 325, 332 (6th Cir. 2011) (delay of 19 months satisfied the first *Barker* factor).   An analysis of the other factors, however, fails to show that Petitioner suffered a speedy trial violation.

The second factor, the reason for the delay, involves determining whether

23

the government or the defendant is "more to blame."    *Doggett*, 505 U.S. at 651.

While some of the delay was attributable to Petitioner's substitution of counsel

and his request for time to await his brother's plea transcripts, delays also arose

from the trial court's administrative issues and the prosecution's need for time to

process DNA evidence, to negotiate plea deals with the accomplices, and to

handle the overall complexity of the case, which involved numerous charges

against several defendants concerning multiple robberies over a three-year period.

Because the delays were caused by Petitioner, the trial court, and the prosecution,

this factor is neutral.

The third factor, the assertion of the right to a speedy trial, weighs in the

prosecution's favor because Petitioner did not clearly assert his right to a speedy

trial in the state trial court.    A defendant's failure to assert his rights in a timely

fashion "weighs heavily against" finding a Sixth Amendment violation.    *United

States v. Thomas*, 167 F.3d 299, 305 (6th Cir. 1999).

The fourth factor, prejudice, concerns three interests:    "(i) to prevent

oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the

accused; and (iii) to limit the possibility that the defense will be impaired."

*Barker*, 407 U.S. at 532.    "Of these, the most serious is the last, because the

inability of a defendant to adequately prepare his case skews the fairness of the

24

entire system." *Id.* This factor weighs in the prosecution's favor because Petitioner neither alleges nor establishes that he suffered personal prejudice due to pre-trial incarceration and there is no indication that his ability to present a defense was prejudiced by the delay attributable to the prosecution.

The fact that the prosecution was able to negotiate with accomplices and obtain their cooperation, or otherwise affirmatively strengthen its case, during the delay does not constitute prejudice. *See United States v. Toombs*, 574 F.3d 1262, 1275 (10th Cir. 2009); *United States v. Abad*, 514 F.3d 271, 275 (2d Cir. 2008) (concluding that the cooperation of co-defendants "is not the sort of prejudice contemplated by *Barker*'s fourth factor"); *United States v. Trueber*, 238 F.3d 79, 91 (1st Cir. 2001) ("[Defendant] does not point to a single authority to support the novel proposition that the potential strength the government's case may acquire over time amounts to prejudice against the defendant."); *United States v. Crouch*, 84 F.3d 1497, 1514 n. 23 (5th Cir. 1996): *United States v. Wells*, No. 2:16-CR-43, 2018 WL 1567561, *2 (E.D. Tenn. March 8, 2018). Indeed, the Supreme Court has recognized that pretrial delay is often justified because "[t]he government may need time to collect witnesses against the accused." *Doggett*, 505 U.S. at 656.

Considering and weighing the above factors, the Court concludes that Petitioner fails to establish a federal speedy trial violation. More importantly for

purposes of habeas review, the Court concludes that the Michigan Court of Appeals' decision that no speedy trial violation occurred is reasonable.   Habeas relief is not warranted on this claim.

### IV.   Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims.

Accordingly,

**IT IS ORDERED** that the Petition for a Writ of Habeas Corpus (ECF No. 1) is **DENIED** and **DISMISSED WITH PREJUDICE**.

Before Petitioner may appeal this decision, a certificate of appealability must issue.   *See* 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b).   A certificate of appealability may issue only if the petitioner makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   When a court denies habeas relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong.   *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).   Petitioner makes no such

showing.   The Court, therefore, **DECLINES** to issue a certificate of appealability.

**IT IS FURTHER ORDRED** that leave to appeal *in forma pauperis* is

**DENIED** because an appeal cannot be taken in good faith.   *See* Fed. R. App. P.

24(a).

**IT IS SO ORDERED**.


s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: March 31, 2021

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, March 31, 2021, by electronic and/or U.S. First Class mail.

s/Aaron Flanigan
Case Manager